DECISION AND JOURNAL ENTRY
Defendant Michael R. Daniel appeals his convictions in the Summit County Court of Common Pleas on three counts of rape and three counts of gross sexual imposition. We affirm.
 I.
On July 14, 1998, Defendant was indicted on one count of rape, one count of gross sexual imposition (a third degree felony), one count of obstructing justice, and one count of intimidation of a crime victim. The indictment was later supplemented with four additional counts of rape, four additional counts of gross sexual imposition (third degree felonies), one additional count of obstructing justice, one additional count of intimidation of a crime victim, and one count of violating a protective order. The charges stemmed from acts of sexual abuse involving Defendant's daughter, Cassie Daniel, who was between three and five years old when the acts occurred. Defendant pleaded not guilty to all counts. Prior to trial, all counts except three counts of rape and three counts of gross sexual imposition were dismissed.
On January 21, 1999, the State gave notice of its intention to introduce evidence under Evid.R. 807. A hearing was held on July 22, 28, and 29, 1999. The trial court found that Cassie was competent to testify but reserved its decision on the applicability of Evid.R. 807 until trial.
A jury trial was held on August 9-16, 1999. After deliberating, the jury found Defendant guilty of three counts of rape and three counts of gross sexual imposition. The trial court sentenced Defendant to life imprisonment on each rape conviction and two years of imprisonment on each gross sexual imposition conviction. The trial court ordered that all sentences be served consecutively to one another. Defendant timely appealed to this court.
 II.
Defendant asserts eight assignments of error. We will address each in due course, consolidating related assignments of error.
 A. Evidentiary Issues Fourth Assignment of Error THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED [DEFENDANT'S] FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WHEN THE COURT ALLOWED WITNESSES TO TESTIFY TO THE QUALITY OF EVIDENCE AND THE CREDIBILITY OF THE STATE'S WITNESSES.
In his fourth assignment of error, Defendant argues that the trial court abused its discretion by admitting hearsay statements from Cassie through the testimony of two witnesses. He asserts that the hearsay statements were not covered by any exception under Evid.R. 803. We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Defendant first directs us to testimony from Linda Keenan, Cassie's grandmother. Keenan testified as to what happened one day after Cassie spoke with Defendant on the telephone:
 [Cassie] was upset playing with another little granddaughter of mine, who is a couple of years older, and they were playing downstairs. They went upstairs to play because I had a large room up there where they could just run and make noise, and they were up there quite a while. And then all of a sudden she [Cassie] came running down the steps, and she was hysterical, she was sobbing, she was shaking, and I didn't know what was wrong with her. I didn't know whether she had been hurt, whether something happened, whether there had been a fight and she came and threw herself in my lap, and she was just sobbing and sobbing. And I asked her what was wrong. And am I allowed to say?
[Prosecutor]: Your Honor?
THE COURT: Proceed, counsel.
[Co-counsel for Defendant]: Objection, your Honor.
THE COURT: Overruled.
 [Keenan:] Asked her what was wrong, and she was still sobbing: you have to call the police, grandma, you have to call, grandma, I have to talk to them. And I kept rocking her. And I said: Why do you want me to call the police? And she said: I have to tell them that my daddy didn't do anything. And she was still shaking.
 And I said: Well, I think we need to wait until you calm down to talk to the police, and she was shaking and she was still crying. And I said: Did you lie to the police when you talked to them before? And she said: No, but my daddy said he wouldn't do anything bad to me anymore if I told them he didn't do anything.
 THE COURT: Were you aware that she was on the phone?
THE WITNESS: No, I was not.
THE COURT: Were you made aware of that later?
THE WITNESS: Yes.
Defendant contends that Cassie's statements were impermissible hearsay.
Evid.R. 803(2) states that hearsay is admissible if the statement is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To qualify as an excited utterance or spontaneous exclamation, the statement must meet a four-part test:
 "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 "(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 "(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
 "(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."
(Emphasis sic.) State v. Wallace (1988), 37 Ohio St.3d 87,89, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
We conclude that Keenan's testimony meets the excited utterance exception under Evid.R. 803(2). Cassie experienced a startling occurrence, which was a telephone conversation with Defendant that contained at least a veiled threat. Cassie reported the incident to Keenan almost contemporaneously with the termination of the telephone call and was visibly affected by the conversation with Defendant. Cassie's statements related to the telephone call, and Cassie personally experienced the conversation with Defendant. The trial court did not abuse its discretion by admitting Keenan's testimony.
Defendant next argues that the trial court should have excluded statement made by Cassie to Sandy Oehler, who was a therapist/social worker with the Akron Child Guidance Center. Cassie was referred to Oehler because she was wetting and soiling herself during the day, including at school, and at night while in bed. After a period of time, it was suspected that the problems may have been related to sexual abuse by Defendant. During the course of several sessions, Cassie told Oehler about various acts of sexual abuse she received at the hands of Defendant and Defendant's brother. Defendant contends that Cassie's statements to Oehler were inadmissible hearsay.
Evid.R. 803(4) allows hearsay testimony containing "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This court has stated that Evid.R. 803(4) "has been interpreted as including diagnosis or treatment related not only to physical injuries, but also to psychological injuries." State v. Grooms (Aug. 19, 1998), Summit App. No. 18558, unreported, at 5.
The trial court did not abuse its discretion by admitting Oehler's testimony relating Cassie's statements. The statements were made during a series of counseling sessions aimed at diagnosing and treating Cassie's behavioral problems and, later, the psychological effects of sexual abuse. Therefore, the testimony was properly admitted under Evid.R. 803(4).
The trial court did not abuse its discretion by admitting the testimony at issue. The fourth assignment of error is overruled.
 Fifth Assignment of Error THE TRIAL COURT ERRED IN ALLOWING OUT OF COURT STATEMENTS BY AN ALLEGED CHILD VICTIM OF SEXUAL ABUSE UNDER EVIDENCE RULE 807 WHERE (A) THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS OF SUCH STATEMENTS; 2) INDEPENDENT EVIDENCE OF THE CRIMES AS ALLEGED; (B) IMPROPER EVIDENCE WAS USED TO DETERMINE THE TRUSTWORTHINESS OF THE CHILD'S OUT-OF-COURT STATEMENTS.
Defendant argues in his fifth assignment of error that the trial court erroneously admitted hearsay testimony of statements made by Cassie under Evid.R. 807. His argument is not well taken.
Evid.R. 807 deals with a hearsay exception in cases of physical or sexual abuse of a child. If the trial court finds that the requirements of the rule are met, then other witnesses may testify as to the out-of-court statements of the child in relation to the abuse. One of the requirements of the rule is that "[t]he child's testimony is not reasonably obtainable by the proponent of the statement." Evid.R. 807(A)(2). In order to declare a child's testimony "not reasonably obtainable," the trial court must find that the child (1) refuses to testify or claims a lack of memory, with certain restrictions; (2) is absent from the trial, and his or her testimony cannot be obtained by other means; or (3) is unable to testify because of death or physical or mental infirmity. Evid.R. 807(B).
In the case at bar, the trial court held a lengthy hearing on the issue of whether statements by Cassie would be admissible under Evid.R. 807. The trial court specifically reserved its ruling on the issue of whether the child's testimony was not reasonably obtainable. At trial, Cassie did testify, and the trial court did not permit testimony relating to statements by Cassie from witnesses, other than those discussed above in the fourth assignment of error. As such, no hearsay was admitted under Evid.R. 807. The fifth assignment of error is overruled.
 B. Sufficiency of the Evidence Second Assignment of Error THE TRIAL COURT INCORRECTLY DENIED [DEFENDANT'S] MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSES OF RAPE AND GROSS SEXUAL IMPOSITION.
 Third Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED [DEFENDANT'S] MOTION FOR ACQUITTAL.
 Sixth Assignment of Error THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO ESTABLISH THE ELEMENT OF FORCE FOR [DEFENDANT'S] CONVICTIONS ON THREE COUNTS OF RAPE WITH FORCE.
Defendant's second, third, and sixth assignment of error address whether there was sufficient evidence to support his convictions and to justify the trial court's decision to overrule his motion for acquittal under Crim.R. 29. The sixth assignment of error specifically addresses the issue of force on the three convictions for rape.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 1. Rape
Defendant was convicted of three counts of rape. R.C.2907.02(A)(1)(b) states: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct includes "vaginal intercourse between a male and female; * * * fellatio * * * between persons regardless of sex; and the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
Under R.C. 2907.02(B), "[i]f the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life." Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." State v. Eskridge (1988),38 Ohio St.3d 56, paragraph one of the syllabus. "`Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" Id. at 58-59, quoting State v. Fowler (1985), 27 Ohio App.3d 149,154. See, also, State v. Dye (1998), 82 Ohio St.3d 323, syllabus.
In the case at bar, Sandy Oehler testified that Cassie told her about three separate acts performed on her by Defendant. Cassie told Oehler that Defendant (1) put his finger "inside her pee-pee," (2) "put his pee-pee in [Cassie's] mouth," and (3) "put his pee-pee inside of [Cassie]," which Cassie elaborated as "[i]nside my pee-pee." Cassie testified as to Defendant putting his pee-pee in her mouth and in her pee-pee. It was established that Cassie identified her vagina as her pee-pee and a penis as a male pee-pee. Cassie was between three and five years old when these acts occurred. Each of these acts was sexual conduct with a child less than thirteen years of age.
Viewing the evidence in a light most favorable to the State, we also conclude that there was sufficient evidence of force to support a sentence of life imprisonment under R.C. 2907.02(B). There was a great disparity between the ages of Cassie, a child of three to five years of age, and Defendant, who was in his twenties. As Cassie's father, Defendant held a significant position of authority over her. A child of Cassie's age is incapable of consenting to sexual conduct. See Eskridge,38 Ohio St.3d at 58. Oehler also testified that, although Cassie never explicitly used the word "afraid" with reference to Defendant, Cassie expressed in other terms that she was fearful of Defendant, that the sexual abuse made her feel "mad and mean," and that she did not feel safe with Defendant. A reasonable jury could find that Cassie's will was overcome such that Defendant used force or threat of force within the meaning of R.C. 2907.02(B). Therefore, there was sufficient evidence to support Defendant's three convictions for rape.
 2. Gross Sexual Imposition
Defendant was also convicted of three counts of gross sexual imposition. R.C. 2907.05(A)(4) states: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Sexual contact includes the touching of a female's breast or of the pubic region or genitals of another "for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
In the case at bar, Oehler testified that Cassie told her about "the squish game" that she played with Defendant in the bathroom, "where you squish people in their pee-pee." Cassie revealed that Defendant did this while her pants were off and that it took place more than once. Cassie also told Oehler that Defendant "kissed [her] boobies" while her shirt was off.
Viewing the evidence in a light most favorable to the State, a reasonable jury could conclude that Defendant touched Cassie's genital or pubic region at least twice and kissed her breasts at least once. Because these took place during what was called a "game," as opposed to during bathing or some other circumstance, a reasonable jury could also conclude that the purpose of Defendant's actions was for his own sexual gratification. Accordingly, there was sufficient evidence to sustain the three convictions for gross sexual imposition.
 3. Conclusion
The trial court did not err by overruling Defendant's motion for acquittal. The second, third, and sixth assignments of error are overruled.
 C. Manifest Weight of the Evidence First Assignment of Error THE CONVICTION OF [DEFENDANT] FOR THE CHARGE OF RAPE AND GROSS SEXUAL IMPOSITION IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.
For his first assignment of error, Defendant contends that his convictions were against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
The State presented as witnesses: Cassie; Randie Mack, Cassie's mother; Linda Keenan, Cassie's grandmother; Tracy Williamson, a woman who also had a child with Defendant; Sandy Oehler, therapist/social worker; Donna Abbott, a pediatric nurse practitioner who examined Cassie; and Detective Vincent Benson of the Akron Police Department, who led the police investigation. Their testimony revealed the following: Cassie was born to Mack and Defendant on July 29, 1992. After Cassie's birth, Mack and Defendant were briefly married but divorced in February 1996. Although the divorce decree did not order visitation, Mack allowed Defendant to have Cassie on alternating weekends.
Cassie was potty-trained by the age of two. When Cassie was three-and-a-half years old, she began to soil and wet herself during the day and at night. She became very withdrawn and whiny. Also during this time, Cassie contracted a urinary tract infection three separate times. After the soiling began, Mack sought counseling for Cassie. During the course of the counseling, Cassie disclosed that Defendant and his brother had been sexually abusing her. While a physical examination was not conclusive, Cassie exhibited several behavioral indicators of sexual abuse.
Defendant presented two witnesses. The first witness, Karol Ross, called into question the methods used by Sandy Oehler in her therapy. The other witness, Nikki Marxen, was Defendant's fiancée. She testified that during the time when the events at issue were alleged to have occurred, she was confined to her bed, that the bedroom was beside the bathroom where the abuse allegedly occurred, and that she heard nothing.
Defendant attacked the credibility of the State's witnesses through cross-examination and his own witnesses. However, this is not a case in which the evidence weighs heavily in Defendant's favor. Accordingly, we cannot say that the convictions are against the manifest weight of the evidence. The first assignment of error is overruled.
 D. Sexual Predator Adjudication Seventh Assignment of Error THE TRIAL COURT ERRED IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT DEFENDANT IS A SEXUAL PREDATOR IN THAT THE RECORD IS VOID OF SUFFICIENT INFORMATION OR FACTORS PURSUANT TO STATUTE TO ENABLE SUCH A FINDING.
Defendant argues in the seventh assignment of error that the evidence before the trial court was not sufficient to support his adjudication as a sexual predator. He asserts that the evidence did not rise to the level of clear and convincing evidence. We disagree.
When determining whether an offender is to be adjudicated a sexual predator, a trial court must hold a hearing pursuant to R.C. 2950.09(B). "At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator." R.C. 2950.09(B)(1). In making this determination, the trial court must consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2).
In order for a trial court to adjudicate an offender to be a sexual predator, the court must consider the factors outlined above and the testimony and evidence presented, and determine whether there is clear and convincing evidence that the offender is a sexual predator. R.C. 2950.09(B)(3). The standard of clear and convincing evidence is met if the evidence produces a firm belief or conviction as to the matter to be established in the mind of the trier of fact. State v. Rexroad (Apr. 1, 1998), Summit App. No. 18539, unreported, at 3. In reviewing the trial court's decision, we must examine the record to determine whether sufficient evidence exists to meet the clear and convincing standard. See Cross v. Ledford (1954), 161 Ohio St. 469, 477.
The record from the trial and the adjudication hearing reveals the following: Defendant was twenty-three to twenty-five years old during the time that the offenses occurred. During that period of time, Cassie was between three and five years old. She was the only victim. Over a two-and-one-half year period, Defendant committed at least three separate acts of rape and of gross sexual imposition on his own daughter, with the likelihood that the abuse occurred at least biweekly. Defendant also had prior convictions for domestic violence. There is nothing in the record to indicate that Defendant had a mental illness or impaired Cassie through drugs or alcohol.
We conclude that there was clear and convincing evidence to justify Defendant's adjudication as a sexual predator. Defendant abused his own young child over a lengthy period of time. Courts have noted that the abuse of young children is an indicator of an offender's likelihood to reoffend. See, e.g., State v. Daniels
(Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported, 1998 Ohio App. LEXIS 801, at *9. The trial court did not err by adjudicating Defendant to be a sexual predator. The seventh assignment of error is overruled.
 E. Sentencing Issues Eighth Assignment of Error THE TRIAL COURT ERRED IN ORDERING THE SENTENCES TO BE SERVED CONSECUTIVELY IN THE ABSENCE OF ANY EVIDENCE IN THE RECORD OF ANY OF THE FACTORS ENUMERATED IN R.C. 2929.14(E), AND IN THE ABSENCE OF ANY FINDING OF SUCH FACTORS ON THE RECORD.
For his eighth and final assignment of error, Defendant argues that the sentence imposed by the trial court was contrary to law. He asserts that the trial court did not make findings required by statute to impose consecutive sentences. We disagree.
We may vacate or modify a sentence only if we clearly and convincingly find that one of four conditions exists. R.C.2953.08(G)(1). The only condition asserted in the case at bar is whether the sentence is contrary to law. R.C. 2953.08(G)(1)(d).
R.C. 2929.14(E)(4)[1] requires a trial court to make three findings before prison terms may be imposed consecutively.
 [T]he court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [3] if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 Id. The trial court must also give "its reasons for imposing the consecutive sentences[.]" R.C. 2929.19(B)(2)(c). See, also, State v. Edmonson (1999), 86 Ohio St.3d 324, 328, 329.
In the case at bar, the trial court imposed life sentences for each of the three rape convictions and two year prison terms for each of the three gross sexual imposition convictions. The trial court then ordered that all sentences be served consecutively to one another. The sentencing hearing contains the following statements by the trial court:
 Quite frankly, sir, I think it's a tragedy this young lady had to come into court here and undergo the trauma of testifying in front of me twice and in front of a jury, and my heart goes out to that child.
 In this case, based upon the verdicts rendered, the Court will in fact impose on each count of rape life imprisonment as required by law.
 The Court will, in fact, order that each of those counts be served consecutively and not concurrently, and that is based upon the nature of this conduct, the seriousness of this offense, the harm that was so great and unusual to this particular child.
 The Court also notes for the record the defendant has in fact been incarcerated, has a number of prior offenses for domestic violence.
 As to the gross sexual imposition, the Court will impose the maximum penalty of two years on each of those counts, also to be run consecutively and not concurrently with each other. And, again, based upon the appropriate factors under 2929.14(A)(3) [sic], these factors are, in fact, necessary to protect this child and protect the public and punish the offender. That's this Court's sentence.
The sentencing journal entry stated:
 The Court further finds, pursuant to O.R.C. 2929.14(E)(3), that consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses, the harm was so great or unusual that single term [sic] does not adequately reflect the seriousness of the conduct, the offender's criminal history shows that consecutive terms are needed to protect the public.
We conclude that the trial court complied with R.C.2929.14(E)(4). The requisite findings are found in the sentencing entry, and sufficient reasons for those findings are found in the sentencing record. The trial court's sentence is not contrary to law. The eighth assignment of error is overruled.
 III.
Defendant's eight assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT, BATCHELDER, P.J., CONCURS.
[1] Formerly R.C. 2929.14(E)(3).